**The STATE of Texas, Appellant,**

v.

**I. B. SHAPIRO, d/b/a Select Liquor & Wines Company et al., Appellees.**

No. 12750.

Court of Civil Appeals of Texas.

Galveston.

Nov. 18, 1954.

Rehearing Denied Dec. 9, 1954.

John Ben Shepperd, Atty. Gen., of Texas, and Horace Wimberly, Asst. Atty. Gen., for appellant.

Billy B. Goldberg and Robert W. Baker, Houston, for appellees.

GRAVES, Justice.

This appeal by The State of Texas, acting through its Liquor Control Board and the Administrator thereof, is from a judgment of the 129th District Court of Harris County, Honorable Roy F. Campbell, Judge, presiding, without a jury, decreeing that the Liquor Control Board had failed to sustain the proof of its claimed right to the forfeiture of 20,077 containers of alcoholic beverages belonging to the appellees, which it had seized, and ordering that Board to do these two things: (1) "to return said alcoholic beverages to I. B. Shapiro and wife, Sarah B. Shapiro, and (2) to issue to the said I. B. Shapiro and Sarah B. Shapiro their temporary permit to dispose of said

al*h*oholic beverages in full within a period of thirty (30) days from issuance of said temporary permit."

. Other than as so recited in its judgment, the court filed no conclusions of fact or law, nor were any requested by either side.

After having heard oral arguments from both sides and studied their written briefs submitted along with them, this Court concludes that no reversible error in such determination by the trial court has been pointed out and that its judgment should be affirmed. In deed, it finds that this short factual summary of the controlling facts underlying the controversy as submitted in their brief to this Court, which have not been successfully controverted by the appellant, fully supports the holding made, to-wit:

"Appellees have been engaged for many years as licensed wholesale dealers for the sale of liquor and wine. For the year beginning September 1, 1952, and ending August 31, 1953, they were so licensed. Prior to the termination of their license in August, 1953, they decided to discontinue their business in wholesale liquor and to confine it solely to the sale of wine.'

"Upon information, they submitted the renewal application that had been received from the Liquor Control Board by them to effectuate this purpose.

"Some time after the first of September, * * * (that) application was returned, indicating that they would have to advertise and go through other formalities which they immediately did and returned the application to Austin.

"They were not told at this time, however, that the permit would not be granted to them. On September 17, 1953, * * * (appellees) were notified that their right to continue in the wine business had been denied on September 11, 1953. On the same date as such notification, agents of the Liquor Control Board seized their entire stock of merchandise consisting of some 1,500 cases and being some 20,077 containers of wine. Prior to the receipt of such notification, appellees received delivery of merchandise purchased in August and also made delivery of a small quantity of wine which had been ordered in August by appellees' customers. All of this was prior to their receipt of notification that their privilege to continue in business was being denied them."

It would seem to this Court, therefore, since the truth of such recited facts must be assumed, that the Liquor Control Board had not established more than a technical violation of the law, occurring in the early part of September, 1953, and that in fact and law that situation did not furnish authority for the seizure it so made; indeed, the arguments of the State's counsel in this controversy appear to this Court to concede that every wholesale dealer who does business after September 1st of each year, and prior to the time he gets his new license for the next year, would be in technical violation of the law. It seems to have been the prevailing practice not to do what was done in this case—that is, to seize the 20,077 containers of alcoholic beverages immediately after the expiration of the appellees' license on August 31st—but to give the holders of such merchandise at least another thirty days to dispose of it. As indicated supra, that was the direct testimony of the appellant's Deputy Supervisor, the witness C. B. McPhaul.

In that situation even if the appellees had not in this instance testified uncontradictedly that all of their alleged sales in this instance had been made prior to the expiration of their license on September 1st, which presumably the trial court accepted as the fact, the appellees point out that the Liquor Control Act itself nowhere provides that every time a dealer violates the law, his entire stock of merchandise may in consequence be seized.

Indeed, the law appears to this Court to specifically set out the penalties it announces against any such violations, including the fines and imprisonment; moreover, before any such possessed merchandise may be seized, by the express provisions of the Act itself, that liquor

or merchandise must be in fact what the law defines as an "illicit beverage". See Vernon's Annotated Penal Code, Art. 666–3a(4).

It would seem plain to this Court, from the undisputed facts, that, for many reasons, the 20,077 containers of wine seized in this instance did not constitute an "illicit beverage," within the meaning of the statute referred to.

These conclusions require affirmance of the judgment. It will be so ordered.

Affirmed.